### GIDEON CARR V. STATE OF OHIO.

1. RECOGNITION OF ATTORNEY AS COUNSEL—DISCRETION OF JUDGE.

   It is within the discretion of the trial judge, in a criminal case, where an attorney has been appointed by the court to defend the prisoner, to recognize or refuse to recognize an attorney as counsel for the defendant who has not been thus appointed. And where it appeared that, upon request of accused that two attorneys, naming them, be appointed to defend him, the court appointed only one of them, and later, and after the jury had been impaneled, the other also appeared for the defense, the judge's refusal to so recognize him, was not an abuse of discretion, justifying reversal, although such attorney stated that he was not attorney for nor related to any of the jurors.

2. PROOF OF CHARACTER OF DECEASED—WHEN INADMISSIBLE.

   It is not competent, in a homicide case, where self-defense is set up, for the accused for the state, in the first instance, where nothing has been shown, or attempted to be shown, as to the character or reputation of deceased for peaceableness or the contrary, to introduce evidence that deceased was a quiet and peaceable man; and such evidence is not competent or proper in rebuttal of proof by the defense that the deceased was a "large and strong man."

3. PRESUMPTION IN SUCH CASES—PREJUDICIAL ERROR.

   The presumption in such cases, is that the character of the person killed was good without any evidence on that subject; and to undertake to strengthen it by evidence when such character has not been attacked, is to the prejudice of the party against whom it is introduced.

4. CORRECT STATEMENT AS TO BURDEN OF PROOF.

   A charge that "on the trial of an indictment for murder the burden of proof that the homicide was excusable on the ground of self defense rests on the defendant, and must be established by a preponderance of the evidence" correctly states the law in Ohio.

**5. CORRECT CHARGE AS TO INTENT.**

A charge that "The law presumes that a rational man, being free to choose and capable of choosing between right and wrong, intends the natural consequences of his act. The purpose or intent to kill in general is proved by circumstances, by what the party does and says, the manner of inflicting the wound, the instrument used and its tendency to destroy life; if palpably calculated to take life it may be presumed he so intended" is a correct statement of the law in Ohio.

**6. CORRECT CHARGE AS TO SELF DEFENSE.**

A charge that "If appearances were such as would have alarmed a man of ordinary firmness and would have impressed him that such danger was imminent, and if the assailed party honestly believed such to be the case, it is not material whether the danger was real or not; the condition of the assailant must be such as to render it necessary on the part of the killer to do the act in self defense. The attack must have been such as in the belief of the defendant rendered the taking of the life of the deceased in his defense necessary. The slayer cannot urge in justification the necessity produced by his own fault," is a correct statement of the law on that subject.

**7. TWO RULES GIVEN IN CHARGE—ERROR.**

It cannot be assumed, where the trial judge gives more than one rule for determining the rights of the accused, that the jury followed the right one. Therefore a statement in a charge in relation to the claim of self defense, in the trial of a person accused of homicide, that "you must be satisfied that Hall manifestly and maliciously intended and endeavored to kill or do great bodily harm," without qualification, constitutes prejudicial error although the true rule, that if accused believed on good ground that deceased intended to kill him, and that his danger was great, it would be sufficient, is stated in other parts of the charge.

**8. RULE AS TO BELIEF THAT KILLING IS ONLY MEANS OF ESCAPE.**

It is not the law that the jury must be satisfied that the killing, to be in self defense, was the only way that accused could escape the threatened danger, and a charge to that effect, without the qualification that if deceased honestly believed, and had proper grounds for that belief, that the only means of escaping was to kill his assailant, it would be sufficient, constitutes reversible error.

**9. USE OF WORDS "EXCUSE" AND "JUSTIFY."**

There is a distinction between "justifiable" and "excusable" homicide and, technically, the use of the word "excuse" instead of "justify" would be preferable in a charge that "accused must act honestly and that the appearance and nature of the assault must be such as to "justify" him in the belief that he was in danger of great bodily harm, etc." The use of the word "justify," in such case, is not, however, calculated to mislead and does not constitute reversible error.

**10. RULE OF STATE V. ELLIOTT, 11 DEC. RE., 332, CITED.**

In view of the holding in State v. Elliott, 11 Dec. Re., 332, affirmed by the Supreme Court, unreported, the circuit court, in case at bar, declines to hold that a statement, in a charge to a jury, that "where self-defense is claimed and the homicide is sought to be excused on the ground of self defense, it implies, it presupposes, that the deceased was intentionally killed" constitutes reversible error.

HEARD ON ERROR.

*E. F Voris* and *Nathan Morse*, for plaintiff in error.

*R. M. Wanamaker, prosecuting attorney*, and *N. D. Tibbals*, for defendant in error.

MARVIN, J. (Orally.)

The original case, in the court of common pleas, was a prosecution under an indictment in which there were two counts, each charging Carr with murder in the first degree. Upon a trial the jury found him guilty of murder in the second degree, and after motion for new trial

Carr v. State.

was overruled judgment was entered upon that verdict and sentence pronounced against Carr for that crime.

A petition in error is filed here, together with a bill of exceptions containing all the evidence, with a prayer that the judgment of the court below be reversed.

The case is this: On May 4, 1900, in Copley township, in this county, one Sylvester Hull was killed, either by Gideon Carr or by himself and his son Edward Carr. There was a fight; on the one side were Gideon Carr and his son Edward, and on the other Hull, the deceased, and one Bramley.

Gideon Carr and Edward Carr were jointly indicted for this killing, and, as has already been said, each count in the indictment charged murder in the first degree. Gideon Carr demanded a separate trial, which was, of course, granted, and it is the judgment in that case which it is sought here to reverse.

Gideon Carr set up as his defense that what was done by him was in defense of himself or of his son Edward, or both, from being killed or very seriously injured by the deceased.

The plaintiff in error asked the court to appoint counsel to defend him. Edward Carr made the same request; and the court appointed to defend Edward Carr, Mr. Nathan Morse of this bar, an experienced lawyer. Gideon Carr had asked to have Edwin F. Voris and Samuel G. Rogers, of this bar, both experienced lawyers, appointed. The court announced that but one attorney would be appointed in each case, that Mr Morse would be appointed in the case of Edward Carr; and after some conversation between the court and counsel, the court appointed Mr. Voris to defend Gideon Carr, Rogers declining to take upon himself the responsibility alone of that defense. When the time came to impanel the jury, Mr. Rogers did not appear as counsel for the defendant, Judge Tibbals appearing, however, with the prosecuting attorney as counsel for the state, the court having announced that no appointment would be made of anyone to assist the prosecuting attorney of the county. It is said that Judge Tibbals was retained by friends of the deceased. In any event two experienced lawyers appeared on the part of the state, to-wit, the prosecuting attorney and Judge Tibbals. When, however, the case came on to be tried Mr. Rogers appeared with the counsel for the defense, Mr. Morse appearing with Mr. Voris in the defense also. Objection was made on the part of the prosecuting attorney to Mr. Rogers participating as counsel for the defense, and the court finally decided, after a great deal of talking back and forth between counsel and the court, that Mr. Rogers would not be recognized as counsel for the defense, and it is urged that there was error to the prejudice of Carr in the holding of the court in that regard.

It was doubtless a matter of discretion with the court whether Mr. Rogers should be recognized as counsel or not, and it was urged upon the court that as the jury was impaneled without any knowledge that Mr. Rogers was to appear, the state had not, or might not, have exercised exactly its challenges as it would have done it if had known that Rogers was to appear. Mr Rogers stated to the court, however, that he was not attorney for any of the members of the jury, nor related to any, but the court, in the exercise of its discretion, said that Mr. Rogers would not be recognized as counsel.

We are not satisfied that there was such an abuse of that discretion as would justify a reversal on that ground.

Again, it is urged there was error on the part of the court in its ruling upon the introduction of evidence, and that one of the errors in that regard grew out of this state of facts. The state had introduced its evidence in chief and rested. The prisoner introduced his evidence and rested; some of the evidence of the prisoner tended to show that what he did was done in defending himself, or his son, or both of them, against an attack made by Hull upon them. Nothing, however, was shown, or attempted to be shown by the prisoner as to the character or reputation of the deceased for peaceableness or the contrary. It was, however, shown that he was a large and strong man.

The state then, in rebuttal, introduced David Bunn, as a witness, and, among other things, asked him if he had the means of knowing the general reputation of the deceased in the neighborhood in which he, the deceased, lived, as to peaceableness and quietness. To this the witness answered in the affirmative. He was then asked this question, as appears on page 357 of the bill of exceptions, "What was that reputation, good or bad?" Objection was made to this question; that objection was overruled, and the proper exception taken, and the witness then answered "Good." Other witnesses to the same effect were introduced on the part of the state, among them Theodore Patrick, Milton Thompson, John F. Moore, C. C. Frederick and Newman Adair. As to the question raised upon each of these witnesses counsel for plaintiff in error urges that the ruling of the court was wrong, and the evidence permitted to be given was prejudicial to the prisoner.

Perhaps it is not claimed on the part of the state that the evidence elicited on this subject was not to the prejudice of Carr if it was not competent, but it is urged that such evidence is entirely competent.

In argument it is said that this evidence was properly in rebuttal of what the prisoner had introduced on the defense as to Hull's being a large, strong man. It would seem that the way to have rebutted that would have been to show that the fact was otherwise, that he was not a large, strong man. Evidence that he was a quiet, peaceable man would have no tendency to show that he was not both large and strong.

The only authority to which the attention of this court has been called in support of the ruling of the trial court in this regard, is a case decided by the Supreme Court of Indiana, Thrawley v. State, 55 N. E. Rep., 95. The eighth clause of the syllabus in that case is directly in point, and reads: "Where the defendant testified that he killed deceased in self defense while the latter was committing an apparently felonious assault on him, the prosecution may, without defendant's consent, and though no evidence has been introduced against deceased to show that his reputation for peaceableness is bad, show that deceased had the reputation of being a peaceable man." And in the opinion, on page 98, the court gives the reasons for that holding, and quotes from two other cases in Indiana, one of which distinctly holds as the court held in this case, and the other seems so to hold, though it is said in the opinion that the record is not so complete as to show how the question arose in that case.

On the other hand, authorities are so numerous as to seem to justify the statement of counsel for the plaintiff in error, that the Supreme Court of Indiana is alone in holding such evidence competent when the character of the deceased for peaceableness has not been attacked by the defendant.

Carr v. State.

In State v. Isaac Potter, 13 Kan., 414, the first clause of the syllabus reads: "On a trial for murder it is error to permit the state in the first instance and as a part of its case to offer testimony showing the character or reputation of the deceased as a quiet and peaceable man."

And Judge Brewer, now a justice of the Supreme Court of the United States, in the opinion, gives the reasons for that holding. Among other things, this is said: "Again, he insists that the court erred in allowing the state to introduce evidence of the character of the deceased as a quiet and peaceable man. It appears that the deceased was killed in an affray; that this was the second quarrel upon the same afternoon between the deceased and the defendant, others participating." Further on this language is used: "On the trial and before closing their case, the prosecution was permitted, over objection, to ask witnesses, who had testified that they knew the deceased, this question: 'State if you knew his general reputation for being a peaceable, quiet and law abiding citizen?' and the witness testified he was a peaceable, quiet, law abiding man. No attack was made by the defendant at any time during the trial on the character of the deceased, and no attempt to show that he was a quarrelsome or turbulent man. The question then is fairly presented whether the prosecution on a trial for murder may, in the first instance and as a part of their case, show the character and reputation of the deceased. We don't understand counsel for the state as claiming that such testimony is admissible in all cases, but only in cases where there is a doubt as to whether the killing was done in self-defense, and where such testimony may serve to explain the conduct of the deceased and is, therefore, fairly a part of the *res gestae*. In such cases it is said that the authorities hold that the defendant may show the bad character and reputation of the deceased as a turbulent and quarrelsome man." A considerable number of authorities are cited in support of that. "And if the defendant may show that the deceased was a known quarrelsome, dangerous man why may not the state show that he was a known peaceable, quite citizen? The argument is not good. The books are full of parallel cases. The accused may in some cases show his own good character, but the state can never, in the first instance, show his bad character. A party can never offer evidence to show a witness's credibility until it is attacked. The reasons for these rules are obvious. Such testimony tends to distract the minds of the jury from the principal question, and should only be admitted when absolutely essential to the discovery of the truth. Again, the law presumes that a witness is honest, that a defendant has a good character, and that a party killed was a quiet and peaceable citizen, except so far as the contrary appears from the testimony in this case, and this presumption renders it unnecessary to offer any evidence in support thereof. No authorities have been cited sustaining the admission of such testimony." He then cites a number of cases which he says, are in point on the holding made by the court.

To the same effect is Parker v. Commonwealth, decided by the court of appeals of Kentucky, 28 S. W. Rep, 500; State v. Eddon, 36 Pacific, 139, a case from the Supreme Court of Washington. It is true that in this last case two of the judges dissented from the opinion, and give the same reasons, substantially in the dissenting opinion that are given by the Supreme Court of Indiana in the cases already referred to for the holding in those cases. The case of People v. Bezy, Supreme Court of California, 7 Pacific, 643, the text books,—Kerr's Law of Homicide, sec.

420, and the authorities there cited; section, 423 McClain's Criminal Law, and the cases there cited, are all to the same effect.

But if it be said that this was not offered by the state in the first instance, what has already been said in this opinion seems to answer that, it was not in rebuttal of anything which had been shown on the part of the defense. The defense had made no attack upon the character of the deceased as to peaceableness and quietness.

Our own Supreme Court in Blakeslee v. Hughes, 50 Ohio St., 490, hold, in a civil case, an action for libel, where the defense was justification: "On the trial of the action in the court of common pleas, that court, over the defendant's objection, permitted the plaintiff to give in chief to the jury evidence of his good character. The circuit court, solely on account of this ruling of the court of common pleas, reversed the judgment and remanded the cause for a new trial, *Held*: That the circuit court did not err." And the reasons—the opinion is a very short one—but the reasons given substantially are as the reasons given in the authorities which have already been cited in the criminal cases; the presumption that the character of the party injured was good without any evidence on the subject, and that to undertake to strengthen it by evidence on that subject when such character has not been attacked, is to the prejudice of the party against whom it is introduced.

We think there was clearly error in the admission of this evidence, and that such error was prejudicial to the prisoner, and for that error the case must be reversed.

It is urged on the part of the plaintiff in error that there was error on the part of the court in its charge to the jury when it was said: "On the trial of an indictment for murder the burden of proof that the homicide was excusable on the ground of self defense rests on the defendant, and must be established by a preponderance of the evidence, so that under the law as laid down by the Supreme Court in this state, where it is sought to excuse an act of killing on the ground of self defense, it is incumbent upon the defendant to show it by a preponderance of the evidence." That is fully sustained by the holdings of the Supreme Court in this state and is distinctly stated in the syllabus, of which there is but one clause, in Silvus v. State, 22 Ohio St., 90. There was no error in that part of the charge.

It is urged that there was error in this language used by the court in the charge: "The law presumes that a rational man, being free to choose and capable of choosing between right and wrong, intends the natural consequences of his act. The purpose or intent to kill in general is proved by the circumstances, by what the party does and says, the manner of inflicting the wound, the instrument used and its tendency to destroy life; if palpably calculated to take life it may be presumed he so intended." We think there is no error in that. The language used by the court is fully justified by the decisions of the Supreme Court in this state and by numerous authorities.

But it is said that there was error in the part of the charge in which the court said, "If the appearances were such as would have alarmed a man of ordinary firmness and would have impressed him that such danger was imminent, and if the assailed party honestly believed such to be the case, it is not material whether the danger was real or not; the condition of the assailant must be such as to render it necessary on the part of the killer to do the act in self defense. The attack must have been such as in the belief of the defendant rendered the taking of

Carr v. State.

the life of the deceased in his defense necessary. The slayer cannot urge in justification the necessity produced by his own fault."

We find that the court made no error in that part of the charge. The language used distinctly states the law as it is.

In another part of the charge this language is used, and it is complained of by the plaintiff in error as being prejudicial and erroneous: "You must be satisfied that Hull manifestly and maliciously intended and endeavored to kill or do great bodily harm to the defendant, Gideon Carr, or to his son, Edward Carr, or to one of them. Did Hull do that, and in doing it was he actuated by malice, or was he simply defending himself, trying to save himself from bodily harm ? These are questions for your determination." Perhaps, it is not claimed on the part of the state that the language used alone properly states the law. The language is, "*You* must be satisfied that Hull manifestly and maliciously intended and endeavored to kill or do great bodily harm." In other parts of the charge, and immediately following this the court gives the correct rule, but this language says to the jury, "You, the jury, must be satisfied that Hull manifestly and maliciously intended and endeavored to kill or do great bodily harm.'' It is claimed by the plaintiff in error that the *jury* need not be thus satisfied. If Carr believed upon good ground that Hull manifestly and maliciously intended and endeavored to kill him, and that his danger was so great, or that of his son, that he must do what he did, that this would be sufficient. We think this is clearly the law. As has already been said, the true rule was given in more than one part of the charge. In several places in the charge the court gave the true rule, but will it do to say, in a criminal case that where the court gives more than one rule for deter mining the rights of the accused, we must presume that the jury followed the right and not the wrong rule? We don't understand that to be the law nor do we find any such qualifications of this statement as makes it conformable with the law as it should have been given, and for this language of the court the case would have to be reversed.

Again, the court used this language: "You must be satisfied that the killing of Hull was the only means of escape from the danger mentioned." Now, that by itself clearly is not a true statement of the law. It was not necessary that the jury should be satisfied that the only way that Carr could escape from Hull was by killing him, if Carr honestly believed and had proper grounds for that belief that the only means of escaping from Hull was to inflict upon Hull what he did inflict upon him, then Carr may be excused from doing what he did. And we think there was error for which the case would have to be reversed in that language of the court.

It is urged on the part of the plaintiff in error that the court again erred in this language used to the jury: "However, as I have stated, in such case he must act *bona fide* and honestly, and that the appearance and nature of the attack and assault upon his son were such as to justify him in the belief that he or his son were in danger of death or great bodily harm." Now, it is urged that the word "justify" is too strong a word there, that if he honestly believed that he or his son were in such danger, he might be excused, but not justified in such belief. Critically that may be true, but certainly it is not an uncommon thing, even among members of the legal profession, to use the word "justify" where Blackstone uses the word "excusable." Blackstone says there are three degrees of homicide, justifiable, excusable and felonious, and

makes the distinction between justifiable and excusable, and perhaps, technically the word "excuse" instead of "justify" would have been the proper word; but it is not to be supposed that the jury would be mistaken or misled by the use of the word "justify" rather than "excuse," and we find no such error in that part of the charge as would authorize a reversal.

But it is said that this language used by the court in its charge to the jury is erroneous: "Gentlemen, where self defense is claimed and a homicide is sought to be excused on the ground of self defense, it implies, it presupposes, that the deceased was intentionally killed, and where the defense is that it was done by reason of attack and assault made by the deceased and he, the defendant, did what he did in danger or apprehension of death, or of great bodily harm, it is then a defense to be proved by the defendant. And the rule, I think, is stated here in this case, and I read the syllabus of the case, which reads, as to the last part of that language, 'That the burden is upon the defendant to show his defense that what he did was in self defense,'" but it is the first clause that is especially complained of. The latter part of this has already been spoken of in this case. "Where self defense is claimed and the homicide is sought to be excused on the ground of self defense, it implies, it presupposes, that the deceased was intentionally killed."

With what we know of the case of State v. Elliott, 11 Dec. Re., 332, we should not be justified in reversing this case for that language of the court. The Elliot case is not reported in the reports of the decisions of the Supreme Court, but we know what was said by Judge Pugh in the trial of that case, and the language was possibly stronger than this. The case was affirmed by the Supreme Court. Of course, that case had such notoriety that the general facts in regard to it are very well known. Whether the facts, however, as they came out in the trial, were such as to relieve from any prejudice by the use of that language, and on that ground the case was affirmed, is not clear. It strikes certainly a majority of the court as an extraordinary proposition to be allowed to stand, but, as has already been said, we would not feel justified, in view of the Elliott case, in reversing on that ground.

The judgment of the court below is reversed for the errors stated in this opinion and for no other, and will be remanded for further proceedings in the court of common pleas.

Mr. Voris: "Does the court pass upon the question of the admission of testimony showing whether there was a right or not?"

The Court: We hold there was no error. "We have not discussed all of the propositions raised, but we find no error except such as have been pointed out in this opinion."